UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:16cr 147 |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy to Commit Wire Fraud |
| KENNETH D. BRICKER, | ) | Count One |
| | ) | |
| Defendant. | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | Forfeiture Allegation |

## CRIMINAL INFORMATION

The United States Attorney charges that:

## INTRODUCTORY ALLEGATIONS

1. Sub-contracting Firm G (Firm G), a North Carolina corporation, provides professional technical support services under subcontract to numerous Department of Defense (DoD) entities. These entities include the U.S. Navy's Norfolk Ship Support Activity (NSSA) and the Naval Air Systems Command (NAVAIR), and the U.S. Army's Communications-Electronics Command (CECOM); among others.

2. PAM began employment at Firm G in 2002 and subsequently became the sole owner and president in 2007.

3. PAM is listed as the originating member and principal officer of a North Carolina Limited Liability Corporation (NCLLC) formed on August 15, 2005.

4. KJD was formerly the Corporate Controller of Firm G.

5. KENNETH D. BRICKER is an accountant and the owner of Company A and Company B. Company A was established as a consulting company which could provide professional support services to the United States Government (USG) as a Service-Disabled

- 1 -

Veteran-Owned Small Business (SDVOSB). Company B was established as a rental property management company. Companies A and B are located in Newport News, Virginia.

## COUNT ONE

From in or around February 2010, and continuing until in or around June 2013, in the Eastern District of Virginia and elsewhere, defendant KENNETH D. BRICKER, PAM and KJD knowingly and willfully conspired and agreed together with each other and with other persons, both known and unknown to the United States Attorney, to commit the following offense against the United States, that is:

> To knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises for which the defendants and co-conspirators transmitted and caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals and sounds, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

### WAYS, MANNER AND MEANS OF THE CONSPIRACY

The ways, manner and means by which the conspiracy was carried out included, but were not limited to, the following:

1. In or about September 2004, KENNETH D. BRICKER formed Company A, which was located in Newport News, Virginia. Company A was established as a consulting company which could provide professional support services to the United States Government (USG) as a Service-Disabled Veteran-Owned Small Business (SDVOSB). Company A never sought nor was it awarded any contracts with the USG.

2

2. In or about November 2006, KENNETH D. BRICKER formed Company B, which was also located in Newport News, Virginia. Company B was established as a rental property management company.

3. In or about 2006, KJD became the corporate controller for FIRM G.

4. In or about August 2005, NCLLC was established with the stated purpose to own and/or operate commercial and residential property rentals. NCLLC is an entity controlled by PAM and his wife.

5. Neither Company A nor Company B employed any persons and neither business performed any work or services of any kind in regard to hundreds of invoices addressed to Firm G. The false invoices were subsequently entered into the accounting records of Firm G so that they appeared as legitimate expenses of Firm G. The defendants allowed the amounts indicated on each of these false invoices to be recorded in the Firm G accounting system knowing, or willfully blind to the fact, that such invoices were, in fact false, and would eventually be billed or allocated to USG contracts either as direct or indirect costs.

6. A cost is identified as a direct cost when it relates to a specific contract, subcontract, or purchase order. For example, materials purchased to complete the requirements of a contract are considered direct materials to that contract. The cost would be allocated/charged to the accounting code set up specifically for that contract in Firm G's accounting system. Direct costs are typically billed to the U.S. Government on cost-reimbursable and Time and Material (T&M) contracts using invoices submitted directly to the Government, or in the case of a subcontract, to the prime contractor holding the contract with the Government. For example, on September 15, 2011, Firm G billed BAE Systems Technology for $68,444.21 on BAE's prime DoD contract N00178-04-D-4018/M804, knowing that it contained $17,645.15 of direct material costs from

Company B. KJD and/or PAM, created and submitted the invoice to BAE, knowing it included Company B's costs, which were in fact, false because no work had ever been done by Company B, and knowing Company B's costs would ultimately be presented to the US Government.

7. Indirect costs are costs that are not directly traceable to a contract, but benefit the operation of the company as a whole. Examples include company security, the human resources department, and facility costs such as electricity and maintenance. Indirect costs are estimated at during the year and allocated to all contracts using various indirect rates such as Overhead, Labor Fringe, or General and Administrative (G&A) rates. These estimated, or provisional indirect rates are billed to the U.S Government on cost-reimbursable contracts using invoices submitted directly to the Government, or in the case of a subcontract, to the prime contractor holding the contract with the Government. For example, Firm G's September 15, 2011, invoice to BAE Systems Technology for $68,444.21 on DOD prime contract N00178-04-D-4018/M804, would include Firm G's estimated G&A costs.

8. In order to establish the final year-end indirect rates to be applied to U.S. Government contracts, Firm G is required in accordance with the FAR clause 52.216-7 "Allowable Cost and Payment", to submit an Incurred Cost Submission (ICS) within six months after the end of the fiscal year. The ICS required Firm-G to identify all indirect costs incurred that they claim are allocable to US Government contracts. PAM and KJD prepared and submitted Firm G's ICS to the Defense Contract Audit Agency (DCAA), an agency within the Department of Defense (DoD), certifying that the Firm G costs claimed in the ICS were allowable in accordance with the cost principles of the Federal Acquisition Regulations (FAR), when in fact, PAM and KJD knew the ICS contained Company A and Company B costs which were false and fictitious. PAM and KJD knew that those false costs would be allocated to all contracts, including U.S. Government contracts.

4

9. For example, in their 2010 ICS, Firm G claimed $1,205,179 in Company A costs and $258,064 in Company B costs as legitimate/allowable G&A costs, knowing that such costs were, in fact false because no work had ever been done. Firm G knew by including these costs in their ICS they would be allocated to every contract/subcontract Firm G engaged in 2010.

10. The G&A rates are also used in developing proposed prices for new contracts, including Firm Fixed Price (FFP) contacts and in determining Time and Material (T&M) contract labor rates. PAM and KJD knew by using the G&A rates that included Company A and Company B costs, which were false, the contracted price was false. PAM and KJD knew Firm-G would ultimately bill the U.S. Government or a U.S. Government prime contractor for costs on those contracts.

11. All or essentially all of Firm G'S business was from the U.S. Government, and primarily from the Department of Defense. The fraudulent payments Firm G made to Company A and Company B were made from money Firm G received from the U.S. Government either directly as a U.S. Government contractor or via U. S. Government prime contractors as a U. S. Government subcontractor.

12. In or about 2006, KJD, in his position as the Firm G controller, entered into an agreement with others, including PAM and KENNETH D. BRICKER, whereby fraudulent payments were made by Firm G to Companies A and B for work and services on behalf of Firm G that were never performed by Companies A and B or NCLLC. The false invoices were next entered into the accounting records of Firm G so that they appeared as legitimate expenses of Firm G relating to USG contracts. The defendants allowed the amounts indicated on each of these false invoices to be recorded in the Firm G accounting system knowing, or willfully blind to the fact, that hundreds of such invoices were, in fact false, and would eventually be billed or allocated to USG contracts.

13. These invoices were primarily created by KJD and emailed to KENNETH D. BRICKER. In return for his role in this scheme, KENNETH D. BRICKER retained 5% of the fraudulent payments made by Firm G to Companies A and B. Shortly thereafter, KENNETH D. BRICKER transferred the remaining 95% of these fraudulent payments to NCLLC, an entity controlled by PAM and his wife, or to PAM and his wife personally.

14. Between in or around February 2010, and continuing until in or around June 2013, on least 37 occasions, KENNETH D. BRICKER received fraudulent interstate wire-transfer payments from Firm G into the business banking accounts of Companies A and B, based upon amounts listed on the herein described fictitious invoices. Each of the Companies A and B resided within the Eastern District of Virginia. In total, during this time period, KDB received approximately $7,569,196 in fraudulent payments from Firm G, retained approximately $332,596 for his personal use, and subsequently issued checks totaling $7,236,600 to NCLLC or to PAM and his wife personally.

15. Neither of the said two companies employed any persons and neither company performed any significant work or services of any kind in regard to hundreds of invoices addressed to Firm G.

16. From in or around 2004, and continuing until sometime in 2014, KJD knowingly and willfully conspired with KENNETH D. BRICKER, the owner of Companies A and B, and PAM, the principal officer of NCLLC (and with other persons both known and unknown to the United States Attorney), to submit false claims to the USG via fictitious invoices which were later billed/allocated to DOD contracts in the names of Companies A and B. Companies A and B, and their respective bank accounts, each resided within the Eastern District of Virginia. In total,

between February 2010 and June 2013, fraudulently-obtained payments issued by Firm G to Companies A and B totaled approximately $7,569,196.00.

## OVERT ACTS

In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Virginia and elsewhere:

1. On or about April 6, 2010, Firm G wire transferred $38,507.04 in interstate commerce from Firm G's account no. #####0791 at the First Bank of Missouri, in Missouri, to Company A's account at SunTrust Bank, account no. #####8447, in Newport News, Virginia, in payment of COMPANY A invoices numbered 020110-001, 020110-2, 030110-001 and 030110-002.

2. On or about November 22, 2010, Firm G wire transferred $84,351.03 in interstate commerce from Firm G's account no. #####0791 at the First Bank of Missouri, in Missouri, to Company A's account at SunTrust Bank, account no. #####8447, in Newport News, Virginia, in payment of COMPANY A invoices numbered 090110-001, 090110-002, 100110-001, 100110-002, 110110-001 and 110110-002.

3. On or about April 22, 2011, Firm G wire transferred $231,611.44 in interstate commerce from Firm G's account no. #####0791 at the First Bank of Missouri, in Missouri, to Company B's account at Wachovia Bank, account no. #####5023, in Newport News, Virginia, in payment of COMPANY B invoices numbered 042120110111, 042120110111M, 042120110211, 042120110211F, and 042120110211M.

4. On or about December 5, 2011, Firm G wire transferred $125,985.75 in interstate commerce from Firm G's account no. #####0791 at the First Bank of Missouri, in Missouri, to Company B's account at Wells Fargo, account no. #####5023, in Newport News, Virginia, in

payment of COMPANY B invoices numbered 12022011091l, 12022011091lF, and 12022011091lM.

5. On or about March 22, 2013, Firm G wire transferred $102,161.79 in interstate commerce from Firm G's account no. #####0791 at the First Bank of Missouri, in Missouri, to Company A's account at SunTrust Bank, account no. #####7463, in Newport News, Virginia, in payment of COMPANY A invoices numbered 010113-001, 010113-002 and 020113-001, 020113-002, 030113-002 and 030113-001.

6. On or about June 10, 2013, Firm G wire transferred $47,835.84 in interstate commerce from Firm G's account no. #####0791 at the First Bank of Missouri, in Missouri, to Company B's account at Wells Fargo, account no. #####5023, in Newport News, Virginia, in payment of COMPANY B invoices numbered 060720130313, 060720130313M, and 060720130413.

## FORFEITURE ALLEGATION

1. The defendant, if convicted of the violation alleged in this Criminal Information, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the

intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

(In accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c)).

Respectfully submitted,

Dana J. Boente
United States Attorney

By: *[signature]*
Stephen W. Haynie
Assistant United States Attorney
VSB No. 30721
U.S. Attorney's Office
101 W. Main Street, Ste. 8000
Norfolk, Virginia 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-3205
steve.haynie@usdoj.gov